**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NADJARI D. REID, | ) |
|                 Plaintiff, | )    00 Civ. 5164 (RCC) |
| - against - | )    ORDER |
| DETECTIVE BRIAN RAFFERTY, SHIELD # 2145, | ) |
|                 Defendant. | ) |

**RICHARD CONWAY CASEY, United States District Judge:**

      Nadjari D. Reid ("Plaintiff"), proceeding pro se, brings this action against Detective Brian Rafferty, Shield # 2145 ("Defendant") under 42 U.S.C. § 1983, alleging malicious prosecution for murder in the second degree. All other claims and defendants in this matter have been dismissed by the Court. A trial having been scheduled to begin in this matter on June 20, 2005, Defendant has submitted five pretrial evidentiary motions pursuant to Rules 16(c)(1) and 16(c)(4) of the Federal Rules of Civil Procedure. For the following reasons, those motions are **GRANTED** and **DENIED** as set forth herein.

**I.    BACKGROUND**

      To sustain a cause of action for malicious prosecution under § 1983, the sole remaining claim in this action, Plaintiff must show that: (1) Defendant commenced a criminal proceeding against Plaintiff; (2) the prosecution ended in Plaintiff's favor; (3) there was a lack of probable cause for commencing the proceeding against Plaintiff; (4) Defendant acted with actual malice; and (5) Plaintiff suffered a deprivation of liberty under the Fourth Amendment. See Murphy v. Lynn, 118 F.3d 938, 944-47 (2d Cir. 1997); see also Reid v. Marrinaccio, No. 00 Civ. 5164 (RCC), 2004 WL 1488194, at *5 (S.D.N.Y. July 1, 2004).

On October 14, 1996, Defendant arrested Plaintiff for the murder of Danny Gonzales. Reid, 2004 WL 1488194, at *1. The prosecution alleged that, while at the Red Door Social Club in Manhattan on October 12, 1996, Plaintiff fatally shot Gonzales and also injured bystanders during an exchange of gunfire with one of Gonzales' friends, Jonathan Santiago. Id. On the day of arrest, Plaintiff was placed in a line-up. Id. The first witness to view him, Archie Cruz, was unable to positively identify Plaintiff as the individual who shot Gonzales. Id. In a second line-up, Santiago identified Plaintiff as the individual who exchanged gunfire with him. Id.

On October 29, 1996, Plaintiff was indicted on charges of murder in the second degree, reckless endangerment in the first degree, and two weapons-possession charges (criminal possession of a weapon in the second degree and in the third degree). Id. During the grand jury proceedings, Cruz testified that he saw Plaintiff aim a gun at a Hispanic person and that he observed Gonzales lying on the floor next to that person, but during trial, Cruz testified that he had lied to the grand jury after Defendant encouraged him to identify Plaintiff as the shooter. Id. at *2. Cruz alleged that Defendant suggested to him that Plaintiff was going to admit to shooting Gonzales in self-defense and that, to help Plaintiff, Cruz should claim that he witnessed Plaintiff act in self-defense. Id. At trial, Cruz testified that he could not conclusively determine who shot Gonzales. Id.

At the conclusion of the trial, the jury convicted Plaintiff of the reckless-endangerment and weapons-possession charges, but acquitted him of the murder charge. Id. On September 16, 1998, Plaintiff was sentenced to concurrent terms of imprisonment totaling thirteen years. Id.; see also People v. Reid, 748 N.Y.S.2d 20, 21 (N.Y. App. Div. 2002) (affirming Defendant's sentence "to concurrent terms of 13 years, 7 years, and 3 ½ to 7 years"). On July 13, 2000, Plaintiff initiated this

action. Reid, 2004 WL 1488194, at *2.[1]

Because some of the elements of Plaintiff's sole remaining claim are resolved as a matter of law, the only issues that remain for trial are (1) whether there was probable cause to commence the proceeding for murder against Plaintiff, (2) whether Defendant acted with actual malice, and (3) the appropriate damages, if any. First, as a matter of law, Defendant commenced the criminal proceeding against Plaintiff for murder in the second degree when he signed the felony complaint against Plaintiff for murder in the second degree. See Davis v. City of New York, No. 03 Civ. 0503 (GEL), 2005 WL 1278520, at *9 (S.D.N.Y. May 31, 2005) (holding that the signing of a criminal court complaint by a police officer satisfies the commencement element of a § 1983 malicious-prosecution action against that officer) (citing Sulkowska v. City of New York, 129 F. Supp. 2d 274, 295 (S.D.N.Y. 2001) (noting that a criminal action is commenced under New York law with the filing of a felony complaint)). Further, as a matter of law, the murder charge and that portion of the criminal proceeding commenced against Plaintiff "terminated in Plaintiff's favor." Reid, 2004 WL 1488194, at *6 (denying Defendant's motion for summary judgment on Plaintiff's malicious-prosecution claim and noting that Plaintiff's conviction on the reckless-endangerment charge did not foreclose his claim for malicious prosecution on the murder charge because the two "offenses are distinct in both their elements and level of severity"). Finally, Plaintiff suffered sufficient post-arraignment liberty restraint resulting from the criminal proceeding at issue to implicate his Fourth

---

[1] Plaintiff's original complaint named New York City, the New York City Police Department, the New York County District Attorney's Office, District Attorney Robert Morgenthau, Assistant District Attorney Ray Marrinaccio, and Defendant as defendants. On September 8, 2000, Plaintiff filed an Amended Complaint that asserted claims against only Marrinaccio and Defendant. The claims against Marrinaccio were dismissed by order dated February 29, 2002 on the ground that Marrinaccio was entitled to absolute immunity.

Amendment rights as a matter of law. See Murphy, 118 F.3d at 944-46 (holding that the "liberty deprivations regulated by the Fourth Amendment [include but] are not limited to physical detention" and that "the imposition of restrictive conditions of release," such as travel limitations or the requirement that the criminal defendant attend court appointments after arraignment, constitute "seizures" within the meaning of the Fourth Amendment and thus provide a constitutional underpinning for a § 1983 malicious-prosecution action).

## II. DISCUSSION

Defendant has submitted five pretrial evidentiary motions, arguing (1) that Plaintiff should be precluded from claiming compensatory damages; (2) that Defendant should be allowed to introduce Plaintiff's use of "false names" into evidence; (3) that Plaintiff should be precluded from claiming that Defendant defamed him; (4) that Plaintiff should be precluded from arguing that he was falsely arrested, that is, that probable cause for his arrest was lacking; and (5) that Defendant should be allowed to cross-examine Plaintiff about his prior convictions.

### 1. Plaintiff's Claim for Compensatory Damages is Not Precluded

Defendant argues that Plaintiff lacks a viable claim for compensatory damages such that Plaintiff should be entitled only to nominal damages, if any. Defendant argues that Plaintiff has not, as a matter of law, suffered any compensable injury related to his Fourth Amendment malicious-prosecution claim because he would have been subjected to the same seizures as a result of the three lesser charges on which he was found guilty. But Defendant's argument assumes the absence of facts that Plaintiff has not yet had the opportunity to prove. Pretrial detention and pretrial release conditions constitute seizures under the Fourth Amendment, Murphy, 118 F.3d at 945-46, and Plaintiff may present evidence as to whether his deprivation of liberty would have been the same had

4

he not been charged with second-degree murder in addition to reckless endangerment and weapons possession.

Further, Plaintiff may recover compensatory damages for impairment of reputation, personal humiliation, and mental anguish and suffering that occurred after his arraignment. Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 307 (1986) ("[C]ompensatory damages [under § 1983] may include not only out-of-pocket loss and other monetary harms, but also such injuries as 'impairment of reputation . . . , personal humiliation, and mental anguish and suffering." (quoting Gertz v. Robert Welch, Inc., 418 U.S. 323, 350 (1974))); Sulkowska, 129 F. Supp. 2d at 307-08 (holding that a plaintiff alleging malicious prosecution could recover compensatory damages for post-arraignment emotional harm). Emotional harm and damage to one's reputation caused by prosecution for murder may be quite different than those same injuries resulting from charges of lesser gravity. Thus, Defendant has not established that, as a matter of law, Plaintiff is unable to prove compensatory damages. Plaintiff will be given the opportunity to prove at trial that he experienced some compensable injury that occurred at or after his arraignment. Defendant's motion to strike Plaintiff's demand for compensatory damages is accordingly denied.

**2.     Defendant May Introduce Evidence of Plaintiff's Use of the Names "Jari Reid" and "Jarie Reid"**

Defendant seeks to introduce evidence that Plaintiff has used the names "Jari Reid" and "Jarie Reid." Defendant claims that Plaintiff used these names as "aliases" and that such use bears upon Plaintiff's veracity and is therefore admissible under Rule 608(b) of the Federal Rules of Evidence. Rule 608(b) provides:

Specific instances of the conduct of a witness, for the purpose of attacking or

> supporting the witness' character for truthfulness . . . may . . . in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Fed. R. Evid. 608(b).

Plaintiffs generally may be cross-examined on the use of false names or false identities under Rule 608(b) when "the use of false names bears directly enough upon the witness' veracity as to outweigh the general prohibition against cross-examining about particular acts of misconduct other than convictions of a crime." Fletcher v. City of New York, 54 F. Supp. 2d 328, 333 (S.D.N.Y. 1999) (deeming the use of aliases by the plaintiff admissible under Rule 608(b) with the limitation that the inquiry not be used as a back door to introduce arrests or convictions for prior criminal conduct in connection with the plaintiff's use of the aliases); see also Young v. Calhoun, No. 85 Civ. 7584 (SWK), 1995 WL 169020, at *5 (Apr. 10, 1995) (finding "that plaintiff's use of aliases [was] the proper subject of cross-examination at trial" under Rule 608(b) to the extent that it was probative of truthfulness). Although the names "Jari Reid" and "Jarie Reid," as substituted for Plaintiff's full name, "Nadjari Reid," may simply constitute nicknames such that their use by Plaintiff would not concern his character for truthfulness or untruthfulness, the Court will allow Defendant to introduce evidence that Plaintiff has used these names to the limited extent that such use bears directly upon Plaintiff's veracity.

**3.     Reference to Allegedly Defamatory Acts by Defendant is Not Precluded**

Defendant submits that Plaintiff should be precluded from alleging that Defendant "defamed [P]laintiff by causing his arrest to run on the local evening news and an article to run in the New York Daily News" and "from referring to any activity which [P]laintiff alleges exposed him to media

attention." (Def.'s Pretrial Evidentiary Motions at 2.) Defendant's argument rests on three grounds: (1) that the Court dismissed Plaintiff's defamation claims by order dated July 1, 2004; (2) that the alleged acts of defamation are irrelevant such that they should be precluded under Rule 402 of the Federal Rules of Evidence; and (3) that the alleged acts of defamation are more prejudicial than probative of the issues of the case such that they should be precluded under Rule 403 of the Federal Rules of Evidence.

Plaintiff argued in his original complaint that, following a line-up conducted by Defendant wherein Plaintiff was not selected, Defendant took Plaintiff on a "perp walk" outside the precinct "to portray him as the one who committed the homicide," which allegedly resulted in the portrayal of Plaintiff as a murderer on the 6 o'clock evening news and a subsequent (second) line-up wherein Plaintiff was in fact selected.[2] (Compl. at 2.) Plaintiff alleged that "Defendant began his plan to accuse plaintiff as the killer when he exposed plaintiff to the media as the murderer." (Id. at 3.)

As already noted, whether Defendant acted with actual malice is one of only two liability issues that remain for trial. Plaintiff need not prove that Defendant "was motivated by spite or hatred" to show malice. Rounseville v. Zahl, 13 F.3d 625, 630 (2d Cir. 1994). Rather, "malice" means only that Defendant must have initiated or continued the criminal proceeding against Plaintiff due to a wrong or improper motive—"something other than a desire to see the ends of justice served." See id. To the extent that Plaintiff wants to argue at trial that Defendant exposed him to

---

[2] The Second Circuit has held that staged "perp walks" (i.e., when an arrestee is made to walk outside a precinct house in front of television cameras) violate an arrestee's Fourth Amendment rights when they lack a legitimate law enforcement justification for transporting a suspect. Lauro v. Charles, 219 F.3d 202, 213-14 (2d Cir. 2000) ("[M]aking use of state resources and police force solely to aid the press in sensationalizing and humiliating a criminal suspect at the expense of the suspect's privacy rights, without any legitimate law enforcement interest, is constitutionally unacceptable.").

7

media attention to illustrate that Defendant acted with malice, the allegation is relevant and such argument is not precluded. Plaintiff, however, is cautioned that his defamation claim against Defendant has been dismissed, and that references to any allegedly defamatory acts by Defendant may be made only with respect to the elements of Plaintiff's remaining malicious-prosecution claim under 42 U.S.C. § 1983.

**4.      Plaintiff is Not Precluded from Arguing Lack of Probable Cause for his Arrest**

Defendant submits that Plaintiff should be barred from arguing that probable cause for his arrest in connection with the October 16, 1996 shooting at the Red Door Social Club was lacking on the ground that the Court dismissed Plaintiff's false-arrest claim (as time-barred by the applicable statute of limitations) by order dated July 1, 2004, rendering the arrest irrelevant. (See Def.'s Pretrial Evidentiary Motions at 3 ("Because the validity of plaintiff's arrest is no longer an issue in this case, any evidence regarding the circumstances of that arrest are irrelevant and should be precluded pursuant to FRE 402.").)

One of the issues remaining for trial is whether there was probable cause to commence the proceeding for murder against Plaintiff. In a malicious-prosecution action, the relevant probable cause determination is whether there was probable cause to believe the criminal proceeding could succeed and, hence, should be commenced. Posr v. Court Officer Shield #207, 180 F.3d 409, 417 (2d Cir.1999). In this regard, probable cause to prosecute and probable cause to arrest are not the same. Id.; Cunny v. City of New York, No. 99 Civ. 4634 (VM), 2001 WL 863451, at *4 n.3 (S.D.N.Y. July 31, 2001) (noting that "[f]or § 1983 purposes, courts have distinguished probable cause to prosecute from probable cause to arrest"); Mejia v. City of New York, 119 F. Supp. 2d 232, 254 (E.D.N.Y. 2000) (noting that "[t]he probable cause determination relevant to a malicious

8

prosecution claim . . . [and] that relevant to a false arrest claim . . . play different roles in the two causes of action"). For one, there is a difference of timing: the existence of lack of probable cause to prosecute is "measured as of the time the judicial proceeding is commenced (e.g., the time of the arraignment), not the time of the preceding warrantless arrest," which is when the existence of lack of probable cause to arrest is measured. Mejia, 119 F. Supp. 2d at 254.

But determinations of probable cause to arrest and probable cause to prosecute frequently overlap. The evidence supporting probable cause to arrest and probable cause to prosecute may be the same. See Cunny, 2001 WL 863451, at *4 n.3 (finding that the available evidence established probable cause in that case "for both the arrest and the prosecution of [the plaintiff]" and "address[ing] both probable cause determinations in tandem"). And "a lack of probable cause to believe the plaintiff committed the crime in question necessarily entails a lack of probable cause to commence a proceeding against him or her." Id. (citing Posr, 180 F.3d at 417). Further, "New York law considers the lack of probable cause and the presence of malice [to be] closely related." Rounseville, 13 F.3d at 630.

Defendant's motion to bar Plaintiff from arguing that Defendant lacked probable cause to arrest him is denied. To the extent that Plaintiff argues that Defendant lacked probable cause to believe Plaintiff committed murder, that argument necessarily goes to a lack of probable cause to commence the proceeding against Plaintiff. Plaintiff is cautioned, however, that his false-arrest claim has been dismissed and he may not litigate it again here. Any reference by Plaintiff to lack of probable cause by Defendant to arrest him may be made only with respect to the remaining malicious-prosecution claim, specifically the elements of lack of probable cause to prosecute and actual malice.

5.  **Defendant May Cross-Examine Plaintiff About his Conviction For Reckless Endangerment and Weapons Possession**

Defendant seeks to cross-examine Plaintiff regarding his conviction for reckless endangerment and weapons possession arising from the October 16, 1996 incident at the Red Door Social Club. Plaintiff objects to informing the jury of the other charges from the indictment.

Rule 609(a)(1) of the Federal Rules of Evidence provides that a witness's prior conviction may be introduced for the purpose of attacking that witness's credibility if "the probative value of admitting this evidence outweighs its prejudicial effect to the accused." Fed. R. Evid. 609(a)(1).

Plaintiff's claims of injury include post-arraignment emotional distress, impairment of reputation, personal humiliation, and mental anguish and suffering. Should the jury find Defendant liable for malicious prosecution of Plaintiff for second-degree murder under § 1983, the jury will have to determine whether Defendant's misconduct was the proximate cause of these or other injuries to Plaintiff if they are to award compensatory damages. Plaintiff's conviction on three of the four counts against him is probative of the effect, if any, that the murder charge may have had on him. Plaintiff may not convey the damaging effects of the criminal proceeding against him for second-degree murder without the jury considering that he was convicted of three other crimes arising from the same incident and tried in the same proceeding. Given the probative nature of the evidence, the prejudicial effect to Plaintiff is outweighed, and Defendant may cross-examine Plaintiff regarding his conviction for reckless endangerment and weapons possession.

III.  **CONCLUSION**

For the foregoing reasons, Defendant's motions are **GRANTED** and **DENIED** as set forth herein. Plaintiff's claim for compensatory damages is not precluded. Defendant may introduce

evidence that Plaintiff has used the names "Jari Reid" and "Jarie Reid" to the limited extent that such use bears directly upon Plaintiff's veracity. Plaintiff may argue that Defendant maliciously exposed him to media attention and that Defendant lacked probable cause to arrest him. Defendant may cross-examine Plaintiff regarding his conviction for reckless endangerment and weapons possession arising from the October 16, 1996 incident at the Red Door Social Club.

**So Ordered:** New York, New York
June 15, 2005

*[signature]*
———————————————
**Richard Conway Casey, U.S.D.J.**